UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RODERICOL A. MURPHY,

        Petitioner,

    v.

CATHERINE S. BAUMAN,

        Respondent.

_____/

CASE NO. 2:06-CV-11118

JUDGE AVERN COHN

MAGISTRATE JUDGE PAUL J. KOMIVES


## REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.   *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    C.   *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    D.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    E.   *Prosecutorial Misconduct (Claims I & III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
            a. Testimony Vouching for the Veracity of Greer . . . . . . . . . . . . . . . . . . . . . . . . . . 15
            b. Testimony Regarding Petitioner's Invocation of Right to Remain Silent . . . . . . . . 17
            c. Introduction of Irrelevant and Inadmissible Evidence . . . . . . . . . . . . . . . . . . . . . 20
            d. Improper Questioning of Montgomery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
            e. Cumulative Effect of the Prosecutor's Misconduct . . . . . . . . . . . . . . . . . . . . . . . 24
    F.   *Jury Instruction (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
        1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
        2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    G.   *Miranda (Claim V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
        1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
        2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    H.   *Identification, Newly Discovered Evidence and Innocence (Claims VI-VIII)* . . . . . . . . . . . . . 31
        1.   *Newly Discovered Evidence & Actual Innocence* . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
        2.   *Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
            a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
    I.   *Ineffective Assistance of Counsel (Claims IV & XI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
        1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
        2.   *Trial Counsel (Claims IV & IX)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
        3.   *Appellate Counsel (Claim IX)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
    J.   *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
        1.   *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

      2.     *Analysis* ............................................................... 43

K.     *Conclusion* ................................................................ 44

III.     <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u> ...................................... 44

\*      \*      \*      \*      \*

I.     <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus. The Court should deny petitioner a certificate of appealability.

II.     <u>REPORT</u>:

A.     *Procedural History*

    1.     Petitioner Rodericol A. Murphy is a state prisoner, currently confined at the Alger Maximum Correctional Facility in Munising, Michigan.

    2.     On September 18, 2003, petitioner was convicted of four counts of armed robbery, MICH. COMP. LAWS § 750.529; one count of carrying a concealed weapon, MICH. COMP. LAWS § 750.227; one count of possessing a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b; and one count of possession of a firearm by a convicted felon, MICH. COMP. LAWS § 750.224f, following a jury trial in the Genesee County Circuit Court. On October 13, 2003, he was sentenced as an habitual offender to concurrent terms of 216-360 months' imprisonment on the armed robbery convictions and 24-90 months' imprisonment on the concealed weapons and felon in possession convictions. Petitioner was also sentenced to a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

    3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

    I.     THERE [WERE] NUMEROUS INSTANCES OF PROSECUTORIAL MISCONDUCT THAT HAD THE CUMULATIVE EFFECT OF DENYING THE DEFENDANT A FAIR TRIAL.

        A.     The prosecutor had the officer in charge of the case vouch for the

veracity of the version of Terrance Greer that implicated the Defendant after Mr. Greer had given two earlier versions of the offense.

B.    The prosecutor elicited testimony from the officer in charge of the case that the Defendant had invoked his right of silence.

C.    The prosecutor introduced irrelevant and inadmissible evidence about the Defendant's possession of cocaine and implied that the car from which the Defendant fled was a stolen car when it plainly was not a stolen car.

D.    The prosecutor improperly questioned a defense witness, Jerome Montgomery, about Mr. Montgomery's pending case, which caused Mr. Montgomery to invoke his Fifth Amendment right to refuse to answer questions.

II.    THE TRIAL COURT ERRED IN INSTRUCTING THE JURY THAT THEY COULD CONSIDER JEROME MONTGOMERY'S REFUSAL TO ANSWER QUESTIONS.

Petitioner also filed a *pro se* supplemental brief, raising two additional claims:

I.    THE NUMEROUS INSTANCES OF PROSECUTORIAL MISCONDUCT IN DEFENDANT'S TRIAL DEPRIVED HIM OF A FAIR TRIAL, CONTRARY TO THE DUE PROCESS GUARANTEES OF THE FOURTEENTH AMENDMENT.

II.    THE FAILURE OF DEFENDANT'S TRIAL ATTORNEY TO OBJECT TO SEVERAL ERRORS DURING THE COURSE OF TRIAL WAS A "DEFICIENT PERFORMANCE" WHICH DEPRIVED DEFENDANT OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Murphy*, No. 251975, 2005 WL 991607 (Mich. Ct. App. Apr. 28, 2005) (per curiam).

4.    Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan

Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard

order. *See People v. Murphy*, 474 Mich. 906, 705 N.W.2d 127 (2005).

5.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on March 15, 2006.  As grounds for the writ of habeas corpus, petitioner's initial application raises the prosecutorial misconduct claims raised by his counsel on direct appeal except for the claim relating to the prosecutor's questioning of Jerome Montgomery, as well as the ineffective assistance of counsel claim raised in his *pro se* brief on appeal.  Petitioner raised the fourth prosecutorial misconduct claim relating to the questioning of Montgomery in an amendment to the petition on April 21, 2006.

6.      Respondent filed her answer on September 25, 2006, contending that petitioner's prosecutorial misconduct claims are barred by petitioner's procedural default in the state courts, and that petitioner's ineffective assistance of counsel claim is without merit.

7.      Petitioner filed a reply to respondent's answer on October 10, 2006, and a supplemental reply on October 26, 2006.

8.      On January 8, 2007, petitioner filed a motion to supplement his habeas petition to add a claim that the cumulative effect of the prosecutor's conduct deprived him of a fair trial, as well as his claim relating to the jury instruction regarding Jerome Montgomery's testimony.  On January 18, 2007, petitioner filed a motion to amend the petition to add further argument on his already pleaded ineffective assistance of counsel claim.

9.      On June 8, 2007, I entered an Order granting petitioner's motions to supplement and to amend, as well as a Report recommending that the Court deny the petition on the merits.  In response to my Report, petitioner filed objections as well as a motion to hold the petition in abeyance so that he could exhaust additional claims in the Michigan courts.  On July 11, 2007, the Court entered an Order granting petitioner's motion to hold the petition in abeyance.

10.     Petitioner thereafter returned to the state courts, filing a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.509.  Petitioner's motion raised the following claims:

I.      DEFENDANT-APPELLANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS WERE VIOLATED WHERE HE WAS HELD IN CUSTODY AND QUESTIONED BUT NEVER ADVISED OF HIS RIGHTS, AS REQUIRED UNDER *MIRANDA V. ARIZONA*, 384 US 436; 86 Sct 1602; 16 LEd2d 694 (1966).  U.S. CONST. V, XIV; MI CONST 1963, ART 1, § 17.

II.     IMPROPER WITNESS IDENTIFICATION TESTIMONY DEPRIVED MR. MURPHY OF HIS CONSTITUTIONALLY GUARANTEED DUE PROCESS PROTECTION UNDER THE SIXTH AND FOURTEENTH AMENDMENT.

III.    WITNESS TESTIMONY OF A RES GESTAE WITNESS WAS NEVER IDENTIFIED OR PRESENTED AT TRIAL, AND THIS WITNESS' EXCULPATORY AFFIDAVIT WAS NEVER INTRODUCED ON APPEAL.  DEPRIVATION OF THIS TESTIMONY HAS DENIED DEFENDANT A FAIR TRIAL.

IV.     NUMEROUS INCONSISTENCIES EXIST IN THE RECORD WHICH WERE NOT EXPLORED AND DEPRIVED MR. MURPHY OF HIS RIGHT TO PRESENT A DEFENSE AND INDICATE ACTUAL INNOCENCE WHEN REVIEWED IN TOTALITY WITH ALL SUBJECT TESTIMONY.

V.      DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL, AND HIS CONSTITUTIONAL RIGHT TO DUE PROCESS, WHERE HIS TRIAL COUNSEL FAILED TO PURSUE MR. HOLMES' TESTIMONY AND APPELLATE COUNSEL FAILED TO ACT UPON AN EXCULPATORY WITNESS AFFIDAVIT AND FAILED TO ADDRESS OTHER ISSUES, AS RAISED WITHIN THIS BRIEF.

On January 24, 2008, the trial court denied the motion for relief from judgment.  Petitioner's applications for leave to appeal were denied by the Michigan Court of Appeals and Michigan Supreme Court in standard orders, based on petitioner's "failure to meet the burden of establishing

entitlement to relief under MCR 6.508(D)." *People v. Murphy*, 483 Mich. 913, 762 N.W.2d 512 (2009); *People v. Murphy*, No. 284698 (Mich. Ct. App. Aug. 15, 2008).

11. On May 27, 2009, petitioner filed a motion to reopen the proceedings and to supplement the petition. On November 30, 2009, I entered an Order granting the motions. Petitioner's supplemental petition raises the four claims raised on direct appeal and asserted in his initial petition (as amended prior to the stay of proceedings), as well as the five claims raised in his motion for relief from judgment.

12. On January 29, 2010, respondent filed a supplemental answer addressing the new claims presented in petitioner's supplemental application. Respondent contends that these claims are barred by petitioner's procedural default in the state courts and are without merit.[1]

B. *Factual Background Underlying Petitioner's Conviction*

The evidence introduced at petitioner's trial is set forth in detail in petitioner's brief on appeal in the Michigan Court of Appeals. *See* Def.-Appellant's Br., in *People v. Murphy*, No. 251975 (Mich. Ct. App.), at 1-14. Briefly summarized, petitioner was convicted in connection with the March 31, 2003, robbery of the North End Market in Genesee Township. Michael Franklin, who lived next door to the store, observed two men get out of a car with masks on their faces. One of the men had a gun. They entered the store, and left after about four minutes, carrying a lady's handbag and a cash register drawer, as well as a box and some money. Franklin took down the license plate number of the car, and identified the items recovered by police as being similar in size, shape, and color to the items he observed in the robbers' possession. Samuel Langworthy was in

---

[1]The analysis which follows includes an analysis of the claims raised in petitioner's original petition and addressed in my prior Report. The analyses of these claims are, for the most part, a verbatim recitation of the analyses in my prior Report. For ease of reference, I have numbered petitioner's claims I-IX, as they are numbered in petitioner's supplemental petition.

the store at the time of the robbery, as was Amy Brent and the store clerk, Maher Abufarha. Each testified that the robbers came into the store armed and demanded money. They each identified various items of clothing worn by the robbers or items taken from their possession.

Lieutenant Russell Sorenson of the Genesee County Sheriff's Department responded to a radio call about a robbery in the area he was patrolling with Deputy Arnold Chema, who was in a separate vehicle. Lieutenant Sorenson spotted the suspects' vehicle, and observed it running a stop sign and a red light before entering southbound I-475. Deputy Chema activated his emergency lights to effectuate a traffic stop. The car immediately pulled over to the shoulder and stopped. One man exited the passenger side of the car and ran up the highway embankment, pursued by Deputy Chema. The driver exited the vehicle and also attempted to run up the embankment, but was caught by Lieutenant Sorenson. The driver was identified as Terrance Greer. Lieutenant Sorenson searched the car and found several coats, currency, a cigar box, cash, a dark colored purse, and a revolver. Greer later pleaded guilty and testified against petitioner, identifying petitioner as the other person involved in the robbery.

Meanwhile, Deputy Chema continued to pursue the other robber. He identified petitioner as the person whom he pursued, and testified that petitioner was wearing khaki pants and a white t-shirt when he exited the vehicle. Deputy Chema lost sight of petitioner when petitioner ran between some houses. After getting into Lieutenant Bouchard's vehicle, he heard a radio call indicating that a state trooper had seen a man matching the description of the passenger going into a home on Russell Avenue, four houses down from where Deputy Chema had lost sight of him. Chema proceeded to the home, where the home owner was telling a state trooper that a man she did not know was in her house. She allowed the police in, and they discovered petitioner by a stairway

to the back door. He was now wearing a black shirt, and had mud on his pants. Petitioner was placed under arrest, and currency was found in his pants and long underwear. Petitioner stated to the officers that "my partner made me take the money." Deputy Chema also found a white t-shirt and more cash at the entrance to the crawl space of a nearby abandoned house.

Petitioner called several witnesses who provided either a complete or partial alibi, and who explained that the cash petitioner was carrying could have come from social security checks which were cashed for petitioner or from a refund on a college loan. Petitioner also called Jerome Montgomery, an inmate of the Genesee County Jail. Montgomery testified that, while in jail, Greer sought his advice on the case. Greer told him that a friend had talked Greer into robbing the store, and that while leaving the store that man had gotten out of the car and petitioner had gotten in. When petitioner noticed the gun and cash register drawer in the car, he asked to be let out. When Greer pulled over in response to the police initiated traffic stop, petitioner ran out of the car. When Montgomery later reported this conversation to Detective Scheidler, he agreed that Greer might have just been running this story by Montgomery to see if it sounded good, but might also have been telling the truth. On cross-examination, the prosecutor asked Montgomery about his own pending case, specifically whether he had told the police that he would not name his accomplices because he did not want to be a snitch. Montgomery refused to answer this question. After a recess during which Montgomery was given the opportunity to speak with counsel, Montgomery again refused to discuss any aspect of his pending case, invoking his privilege against self-incrimination. In lieu of completely or partially striking Montgomery's testimony, both the prosecutor and defense counsel agreed to let the testimony stand, with a limiting instruction to the jury.

Petitioner also testified on his own behalf, denying any involvement in the robbery. His

testimony corroborated some of the testimony of his alibi witnesses, and was consistent with the story Greer had purportedly told to Montgomery. Petitioner testified that when he exited the vehicle, he saw a man running toward him with a gun and he did not know that the man was a police officer, so he ran away in fear.

C.      *Procedural Default*

Respondent first contends that petitioner's prosecutorial misconduct claims are barred by petitioner's procedural default in the state courts, because petitioner failed to object at trial. Although petitioner's failure to object does constitute a default, the Court should nonetheless consider the merits of the claims. A procedurally defaulted claim may be considered on the merits if a habeas petitioner demonstrates cause for, and prejudice attributable to, the default. Here, petitioner asserts that his trial counsel was ineffective in failing to object at trial. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). And, to demonstrate that counsel was ineffective petitioner must show, *inter alia*, that he was prejudiced by counsel's failure to object–*i.e.*, that the objections would have been meritorious. Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

Respondent also contends that petitioner's supplemental claims are barred by petitioner's procedural default because he failed to raise these claims on direct appeal. the Michigan Court of

Appeals and the Michigan Supreme Court both rejected petitioner's appeal based on his "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." The Sixth Circuit has conflicting decisions regarding the sufficiency of this language to invoke the procedural bar in Rule 6.508(D)(3) and constitute a procedural default in federal court. *Compare Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000) (language alone sufficient to constitute invocation of procedural bar), *with Abela v. Martin*, 380 F.3d 915, 923-24 (6th Cir. 2004) (language insufficient where lower court opinion rejected claims on the merits). The Sixth Circuit has recently granted rehearing *en banc* to resolve this issue. *See Guilmette v. Howes*, No. 08-2256 (6th Cir. Mar. 12, 2010).

While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Thus, while the procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also*, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995). In light of the uncertainty in the Sixth Circuit regarding this issue, the Court should therefore proceed to the merits of petitioner's claims. Indeed, the Sixth Circuit itself has taken this approach. *See Roush v. Burt*, 313 Fed. Appx. 754, 757-58 (6th Cir. 2008) (noting the Sixth Circuit's conflicting decisions and the rule that procedural default is not jurisdictional, and concluding "because we affirm the district court's decision on the merits, we leave issues regarding procedural default and the generic

use of MCR 6.508(D) for another day.").

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme]

Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's

resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.      *Prosecutorial Misconduct (Claims I & III)*

Petitioner first claims that the prosecutor committed misconduct in several respects, thereby depriving him of a fair trial. Specifically, petitioner contends that the prosecutor improperly: (1) elicited testimony from a police officer vouching for the veracity of Greer's statement implicating petitioner; (2) elicited testimony regarding petitioner's invocation of his right to remain silent; (3) introduced irrelevant evidence concerning petitioner's possession of cocaine and the ownership of the vehicle; and (4) questioned Montgomery, causing Montgomery to invoke his privilege against self-incrimination. Petitioner also contends that the cumulative effect of these instances of misconduct deprived him of a fair trial. The Court should conclude that petitioner is not entitled to habeas relief on these prosecutorial misconduct claims.

1.      *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the

accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (internal quotation omitted).

Petitioner's prosecutorial misconduct claims also implicate evidentiary issues. Similar to his prosecutorial misconduct claims, petitioner must show more than that the evidence was erroneously admitted under state law. It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional violation. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).

As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal

case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

2.     *Analysis*

a. *Testimony Vouching for the Veracity of Greer*

At trial, the prosecutor questioned Detective Scheidler, the officer in charge of the case, about Greer's various statements to the police. In the first statement, Greer told Scheidler that he only drove the car and did not himself go into the store. *See* Trial Tr., Vol. V, at 891. After the two watched a video tape of the store from the store's surveillance camera, Greer admitted that he had gone into the store with someone named Jerry, and then dropped off Jerry and picked up petitioner after leaving the store. *See id.* Finally, in the third statement, Greer told Scheidler that petitioner was involved in the robbery. During the course of Scheidler's testimony concerning these statements by Greer, the prosecutor elicited from Scheidler that, based on his experience and training in interrogation techniques and his observation of Greer's body language, he did not believe that Greer was being completely truthful in either his first or second statements to Scheidler. *See id.* at 889-91.

Petitioner contends that this testimony constituted improper bolstering of Greer's testimony at trial. The Michigan Court of Appeals disagreed, concluding that the testimony was proper. The court reasoned that petitioner had impeached Greer with his prior inconsistent statements, and that the prosecutor's questions were in response to this impeachment and, rather than bolstering Greer's testimony, "aided the jury by explaining why the police would continue to question Greer after his first and second statements." *Murphy*, 2005 WL 991607, at *1, slip op. at 1-2. The Court should conclude that this determination was reasonable.

Improper vouching occurs either (1) "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or (2) through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *see also*, *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).[2] Here, the prosecutor neither indicated a personal belief in Greer's credibility nor suggested that facts not in evidence gave credence to Greer's testimony. Rather, a separate witness testified concerning the veracity of Greer's statements prior to trial, in the course of explaining his own actions in questioning Greer. Petitioner's claim, therefore, raises an issue not of improper prosecutorial vouching or bolstering, but rather one of evidentiary bolstering. Even if the evidence was inadmissible as a matter of state law, or as a matter of federal evidence law, petitioner cannot show that the introduction of this evidence deprived him of due process or any constitutional right. On the contrary, "[b]olstering claims have been (expressly) held not to be cognizable on federal habeas

---

[2] Some cases referring to only the first type of comment as "vouching" and describe the second type of comment as "bolstering." *See Francis*, 170 F.3d at 551.

review." *Diaz v. Greiner*, 110 F. Supp. 2d 225, 234 (S.D.N.Y. 2000); *cf. Regan v. Hoffner*, 209 F.

Supp. 2d 703, 715 (E.D. Mich. 2002) (Friedman, J.).  Accordingly, the Court should conclude that

petitioner is not entitled to habeas relief on this claim.  Further, Scheidler's testimony was a fair

response to defense counsel's impeachment of Greer with his inconsistent statements, and thus was

permissible.  *See United States v. Mitchell*, 73 Fed. Appx. 670, 672 (5th Cir. 2003); *United States*

*v. Santiago*, 46 F.3d 882, 891-92 (9th Cir. 1995).  Accordingly, the Court should conclude that

petitioner is not entitled to habeas relief on this claim.

> *b.  Testimony Regarding Petitioner's Invocation of Right to Remain Silent*

Petitioner next contends that the prosecutor improperly elicited testimony from Scheidler

regarding petitioner's invocation of his right to remain silent.  During Scheidler's testimony, the

following exchange occurred:

> Q:  Did you–did you observe Mr.–Defendant Murphy's demeanor and body language at that point in time?
>
> A:  Yes.  Very defiant.  Um–not cooperative at all.
>
> Q:  Did you try to talk to the defendant at all–Defendant Murphy?
>
> A:  I tried to ask him a few questions and he told me he really didn't have anything to tell me.  Ah–it was very hard to understand Mr. Murphy also.  Ah–he mumbled a lot.  He–ah–sometimes I couldn't understand a word he was saying.  Other times–ah–he would talk fairly clear.  When he told me he didn't have anything basically–ah–to tell me, that was understandable and–ah–but–ah–other times I–I just didn't understand a word he was saying.
>
> Q:  You say that–what exactly do you recall him saying that you clearly remember the defendant saying?
>
> A:  Ah–the gist of it was that he didn't have any information to give me.  Ah–he–I can't remember his exact statement, but it was something like–ah–um–ah–it's really hard to recall exactly–
>
> Q:  Why don't–okay.

A:      But it was that–ah–he just didn't have any information to give me.

Q:      And you say he was uncooperative and defiant when he was telling you this?

A:      Ah–even to get him to look at me was difficult.  Um–he–ah–just was not cooperative.

Q:      Did you try to advise the Defendant Murphy of his rights and see if he would be willing to waive his rights?  I'm talkin' about his <u>Miranda</u> rights.

A:      No, sir.  At that time–ah–I had a thousand other things to do and I–I felt–ah–that it would be a waste of time.  With–ah–the experience I've had with talking to individuals, I believed that to be a dead-end by his–ah–both his body language and his actions at the time.

Q:      And did Defendant Murphy ever try to volunteer, "Hey, let me tell you about something," after you tried to talk to him?

A:      No, sir.

Q:      Since the time of his arrest has the defendant ever sent you chits or provide you information?

A:      No, sir.

Trial Tr., Vol. V, at 892-93.  The prosecutor again commented on petitioner's failure to cooperate with Detective Scheidler during closing argument.  *See id.*, Vol. VI, at 1117-18.

Petitioner contends that Scheidler's testimony and the prosecutor's comment during closing argument constituted an improper comment on his invocation of his right to remain silent.  The Michigan Court of Appeals rejected this claim, explaining that Scheidler's testimony was invited by defense counsel's opening statement suggesting that the police did not give petitioner a chance to speak with them, and that there was no evidence that petitioner had actually invoked his right to remain silent.  *See Murphy*, 2005 WL 991607, at *1, slip op. at 2.  The Court should conclude that this determination was reasonable.

The Fifth Amendment provides, in relevant part, that "[n]o person . . . shall be compelled in

any criminal case to be a witness against himself[.]" U.S. CONST. amend. V. This provision applies to the states via the Due Process Clause of the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 6 (1964). The Supreme Court has determined that this provision "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615 (1965). Likewise, "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Doyle v. Ohio*, 426 U.S. 610, 618 (1976). Despite this rule, Scheidler's testimony did not violate the Fifth Amendment, for three reasons.

First, in *United States v. Robinson*, 485 U.S. 25 (1988), the Court held that the *Griffin* prohibition on comment by the prosecutor does not apply "where . . . the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel[.]" *Robinson*, 485 U.S. at 32; *see also, United States v. Hasting*, 461 U.S. 499, 515 (1983) (Stevens, J., concurring) ("But I do not believe the protective shield of the Fifth Amendment should be converted into a sword that cuts back on the area of legitimate comment by the prosecutor on the weaknesses in the defense case."). Here, defense counsel indicated during opening argument that the police had not given petitioner an opportunity to speak and tell his side of the story, and Scheidler's testimony was a fair response to counsel's argument.

Second, in *Fletcher v. Weir*, 455 U.S. 603 (1982) (per curiam), the Court limited *Doyle* to situations in which the defendant's silence was induced by the governmental assurances embodied in the *Miranda* warnings. Where such warnings have not yet been give, it does not "violate[] due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand." *Fletcher*, 455 U.S. at 607. Here, Scheidler testified that he did not give

petitioner his *Miranda* warnings, and petitioner makes no argument that he was given his *Miranda* warnings at any time. Because his "silence" was not induced by the *Miranda* warnings, the use of that silence at trial does not constitute a *Doyle* violation.

Finally, neither the prosecutor nor Scheidler commented on petitioner's silence as understood in *Doyle*. *Doyle* does not apply where the accused actually speaks with the police. "Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all." *Anderson v. Charles*, 447 U.S. 404, 408 (1980). Here, petitioner did not invoke his right to remain silent; rather, he spoke with Scheidler, telling Scheidler that he was not involved and did not have any information about the robbery. *See Burton v. Bock*, 320 F. Supp. 2d 582, 591 (E.D. Mich. 2004) (Lawson, J.) ("The mere refusal to answer or respond to a question, without more, does not constitute an assertion or reassertion of the right to silence."), *aff'd*, 187 Fed. Appx. 465, 471 (6th Cir. 2006). For these three reasons, Scheidler's testimony and the prosecutor's comment did not impermissibly comment on petitioner's invocation of his privilege against self-incrimination.

### c. Introduction of Irrelevant and Inadmissible Evidence

Petitioner next contends that the prosecutor introduced irrelevant evidence of other bad acts which deprived him of a fair trial. Specifically, Officer James Eaton and Detective Scheidler testified that cocaine was found in the brown leather jacket found in the car used to commit the robbery. *See* Trial Tr., Vol. IV, at 797-98; Vol. V, at 879-82. Greer also suggested in his testimony that the car being driven by petitioner was stolen, stating that the steering column was "messed up" and the car had to be started by "pulling this thing up." *See id.*, Vol. III, at 529-30. The Michigan

Court of Appeals rejected petitioner's claim, reasoning that the evidence was admissible as *res gestae* evidence to give a complete story regarding the events in question. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Both the Supreme Court and the Sixth Circuit have repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial. *See Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001); *Pennington v. Lazaroff*, 13 Fed. Appx. 228, 232 (6th Cir. 2001) (per curiam) (unpublished); *Manning v. Rose*, 507 F.2d 889, 893-95 (6th Cir. 1974). Here, as the Michigan Court of Appeals explained, the evidence was relevant as part of the *res gestae* of the crime, and to establish a possible motive from the robbery. *See Murphy*, 2005 WL 991607, at *2, slip op. at 2. Accordingly, petitioner cannot show that he was denied a fair trial by the introduction of this evidence.

### d. Improper Questioning of Montgomery

Petitioner next contends that the prosecutor improperly questioned witness Jerome Montgomery regarding Montgomery's pending, unrelated criminal case, causing Montgomery to invoke his right to remain silent. At trial, Montgomery testified that Greer came to him in the Genesee County Jail and told him of a scenario in which Greer had robbed the store with another man. The other man got out of the car after the robbery, and petitioner got into the car. Montgomery told Scheidler that this story could have been the truth, or could have been merely Greer running a story past Montgomery to see how it would be received. On cross-examination, the prosecutor asked Montgomery whether, in connection with his own case, he had refused to tell the police who else was involved because he was not a snitch. Montgomery refused to answer any

questions concerning his own case. The trial court recessed, and permitted Montgomery the opportunity to speak with his attorney. After the recess, Montgomery again invoked his privilege against self-incrimination. The prosecutor explained that three remedies were available for his inability to cross-examine Montgomery: total striking of Montgomery's testimony; partial striking of Montgomery's testimony; or a limiting instruction. The prosecutor indicated that he had no objection to the least severe of these remedies, permitting the testimony to stand with an appropriate limiting instruction. Defense counsel agreed, and the trial court adopted this approach. The prosecutor then asked Montgomery a series of specific questions, to each of which Montgomery invoked his privilege against self-incrimination. Defense counsel asked one question on redirect examination, which Montgomery did answer. *See* Trial Tr., Vol. V, at 1015-22. According to petitioner, this questioning caused Montgomery to invoke his right to remain silent, thereby denying petitioner a fair trial.

At the outset, it is not entirely clear whether petitioner is claiming that questioning Montgomery on his own criminal case was improper impeachment under Michigan Rules of Evidence 608 and 609 and that he was deprived of a fair trial on this basis alone, or whether he is claiming that Montgomery's subsequent invocation of his right to remain silent and refusal to testify denied petitioner his right to present a defense. In either event, petitioner's claim is without merit.

With respect to the former, petitioner cannot show that the prosecutor's questions violated Rules 608 and 609, much less that the attempt to elicit this information deprived him of a fair trial. Rule 609 deals with impeachment of a witness based on the fact of conviction of a crime involving an element of theft or dishonesty. *See* MICH. R. EVID. 609. That rule was not applicable with regard to Montgomery's testimony, because the prosecutor was not attempting to impeach Montgomery's

general credibility through any criminal conviction; indeed, Montgomery had yet to be convicted on the charge about which the prosecutor inquired. Rather, the prosecutor was attempting to impeach Montgomery's testimony that he told Greer to tell the police who was involved with the fact that Montgomery did not follow his own advice in his own case–that is, did not himself tell the police who was involved in the robbery for which he was charged. And Rule 608 provides that such inquiry on cross-examination is permissible: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility . . . may . . . , if probative of truthfulness or untruthfulness, be inquired into on cross- examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified." MICH. R. EVID. 608(b). Thus, the prosecutor's attempt to elicit this information did not run afoul of Rules 608 and 609.

To the extent that petitioner claims he was somehow denied the right to present a defense because the prosecutor caused Montgomery to invoke his right to remain silent, the claim is likewise without merit. A defendant's right to right to present a defense is violated only where the loss or exclusion of evidence "infringe[s] upon a weighty interest of the accused." *United States v. Scheffer*, 523 U.S. at 303, 308 (1998). A "weighty interest of the accused" is infringed where "the exclusion of evidence seriously undermined 'fundamental elements of the defendant's defense' against the crime charged." *Miskel v. Karnes*, 397 F.3d 446, 455 (6th Cir. 2005) (quoting *Scheffer*, 523 U.S. at 315). Thus, "'[w]hether the exclusion of [witnesses'] testimony violated [defendant's] right to present a defense depends upon whether the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist.'" *United States v.*

*Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (quoting *Washington v. Schriver*, 255 F.3d 45, 47 (2d Cir. 2001)) (alterations by quoting court). Here, petitioner was not deprived of any evidence by Montgomery's invocation of his privilege against self-incrimination. Montgomery answered every question posed to him by defense counsel, refusing only to answer the prosecutor's impeachment related questions. And, although the prosecutor could have sought such relief under state law, the prosecutor did not seek the striking of Montgomery's testimony and the trial court did not grant such relief. Thus, the jury heard every bit of testimony from Montgomery that petitioner desired it to hear. Thus, petitioner cannot show that he was prejudiced–that is, that a "weighty interest" of his was infringed–by Montgomery's invocation of his privilege against self-incrimination. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### e. Cumulative Effect of the Prosecutor's Misconduct

Finally, petitioner contends that he was denied a fair trial by the cumulative effect of the prosecutor's misconduct. The Court should conclude that petitioner is not entitled to habeas relief on this claim. As just discussed, none of the prosecutor's actions amounted to prosecutorial misconduct, and thus petitioner's "argument that the cumulative effect of such misconduct renders his trial fundamentally unfair is without merit." *United States v. Sherrill*, 376 F.3d 535, 539 (6th Cir. 2004); *see also*, *Millender v. Adams*, 376 F.3d 520, 529 (6th Cir. 2004) (cumulative error claim is without merit where there are "no errors to consider cumulatively.").

F.     *Jury Instruction (Claim II)*

Petitioner next contends that he was denied a fair trial by the limiting instruction given to the jury regarding Jerome Montgomery's invocation of his right to remain silent. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Clearly Established Law*

In order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair.  *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, this Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'"  *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).  If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.  *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990).  In short, instructional errors of state law will rarely form the basis for federal habeas corpus relief.  *See Estelle*, 502 U.S. at 71-72.

2.    *Analysis*

In response to Montgomery's refusal to answer the prosecutor's questions concerning Montgomery's own pending case, the trial court instructed the jury that it could consider Montgomery's refusal to answer as a factor in evaluating Montgomery's credibility.  The Court should conclude that petitioner is not entitled to habeas relief on this claim, because there is no clearly established federal law as determined by the Supreme Court which prohibits this type of instruction.

The Supreme Court has held only that a criminal defendant's silence or failure to testify may not be used against him at trial, and that the jury may not draw any adverse inference from such a refusal to testify. *See Baxter v. Palmigiano*, 425 U.S. 308, 317 (1976) (discussing *Griffin v. California*, 380 U.S. 609 (1965)). The Court has never held that a witness's silence or refusal to testify may not be the basis for an adverse inference or a credibility finding by the jury. While some courts of appeals have so held, *see United States v. Nunez*, 668 F.2d 1116, 1123 (11th Cir. 1981) (citing cases); *United States v. Lizza Indus., Inc.*, 775 F.2d 492, 496-97 n.2 (2d Cir. 1985), these cases cannot clearly establish this rule under § 2254(d). And, in any event, other courts have reached a contrary conclusion, *see United States v. Berrio-Lomdono*, 946 F.2d 158, 162 (1st Cir. 1991), and the whole issue seems to be a confusion of inter- and intra-Circuit conflicts. *See* Charles R. Nesson & Michael J. Leotta, *The Fifth Amendment Privilege Against Cross-Examination*, 85 Geo. L. Rev. 1627, 1646-52 (1997).

Further, in the absence of any clearly established law on this point, the Supreme Court's Fifth Amendment decisions point in the opposite direction. For example, the Court has explained that the Fifth Amendment privilege is a personal privilege which adheres to the person and not to the information which may incriminate him, *see Couch v. United States*, 409 U.S. 322, 328 (1973), and that the privilege protects a person only against being incriminated by his or her own compelled testimonial communication, *see Doe v. United States*, 487 U.S. 201, 207 (1988). Here, neither petitioner nor Montgomery were compelled to give incriminating statements, and petitioner was not penalized for his own exercise of that right. And, as the Court has explained, outside of situations involving a defendant's Fifth Amendment right, silence is often compelling evidence. *See Baxter*, 425 U.S. at 319. As one set of commentators has explained, the rule of *Griffin*–that guilt may not

be inferred from the exercise of the Fifth Amendment privilege against self-incrimination–

> is inapposite to the invocation of the privilege by a witness, whether the privilege is selectively invoked or invoked as to all questions. As the Court explained in *Griffin*, to allow a jury to infer guilt from the invocation of the privilege would constitute a "penalty . . . for exercising a constitutional privilege."  Drawing such an inference as to a defendant "cuts down on the privilege by making its assertion costly." Because a witness is not on trial, however, it makes no cognizable difference to her whether the jury believes that she has committed a crime because she pled the privilege.  Allowing the jury to draw inferences about a witness does not make the invocation of the privilege costly. The worst that can happen to a witness if the jury draws adverse inferences from her invocation of the privilege is that she will be disbelieved.

Nesson & Leotta, *supra*, at 1672-73 (quoting *Griffin*, 380 U.S. at 614).

In short, no Supreme Court holding establishes that it is impermissible for a court to instruct the jury that it may consider a witness's refusal to answer on the basis of the privilege against self-incrimination as a basis for evaluating the witness's credibility, the reasoning of the Supreme Court's extant Fifth Amendment jurisprudence does not suggest such a rule, and the courts of appeals have reached conflicting and at times confusing decisions on the issue in direct criminal appeals.  In these circumstances, it cannot be said that the Michigan Court of Appeals's decision permitting this instruction was either contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court under § 2254(d)(1).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.    <u>*Miranda*</u> *(Claim V)*

In his fifth claim, petitioner contends that the introduction of his statements to the police at trial violated his Fifth Amendment privilege against self-incrimination.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Clearly Established Law*

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court considered the applicability of the Fifth Amendment's Self-Incrimination Clause to custodial interrogations by the police. The Court ruled that, in some circumstances, statements made while in custody can violate the Self-Incrimination Clause even if the statement was otherwise "voluntary" under the Due Process Clause. As the Court has more recently explained, the *Miranda* decision

> concluded that the coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements, and thus heightens the risk that an individual will not be "accorded his privilege under the Fifth Amendment . . . not to be compelled to incriminate himself." [*Miranda*, 384 U.S.] at 439. Accordingly, we laid down "concrete guidelines for law enforcement agencies and courts to follow." *Id.*, at 442. Those guidelines established that the admissibility in evidence of any statement given during custodial interrogation of a suspect would depend on whether the police provided the suspect with four warnings. These warnings (which have come to be known colloquially as "Miranda rights") are: a suspect "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of any attorney, and that if he cannot afford an attorney one will be appointed for him prior to questioning if he so desires." *Id.*, at 479.

*Dickerson v. United States*, 530 U.S. 428, 435 (2000) (parallel citations omitted). The *Miranda* Court explained that if the suspect indicates that he wishes to remain silent, "the interrogation must cease." *Miranda*, 384 U.S. at 474. Similarly, if the suspect requests counsel "the interrogation must cease until an attorney is present." *Id.*; *see also*, *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). Although it has been characterized otherwise at times, the rule of *Miranda* is of federal constitutional dimension. *See Dickerson*, 530 U.S. at 438-40. Thus, claims based on the right to counsel at questioning recognized in *Miranda* are cognizable on habeas review. *See id.* at 439 n.3; *Thompson v. Keohane*, 516 U.S. 99, 107 n.5 (1995).

The *Miranda* rule protects a suspect's Fifth Amendment privilege not to be "compelled" to incriminate himself. The rule is based on the notion that "custodial police interrogation, by its very

nature, isolates and pressures the individual," and therefore "the coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements, and thus heightens the risk that an individual will not be 'accorded his privilege under the Fifth Amendment . . . not to be compelled to incriminate himself.'" *Dickerson*, 530 U.S. at 435 (quoting *Miranda*, 384 U.S. at 439). To guard against this, *Miranda* "laid down 'concrete guidelines for law enforcement agencies and courts to follow.'" *Id.* (quoting *Miranda*, 384 U.S. at 442). This rationale for the rule, however, also limits its applicability to only those interrogations which are "custodial." *See Thompson*, 516 U.S. at 102; *California v. Beheler*, 463 U.S. 1121, 1124 (1983) (per curiam); *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977) (per curiam). "Custody for *Miranda* purposes has been . . . narrowly circumscribed." *Minnesota v. Murphy*, 465 U.S. 420, 430 (1984). As the Court explained in *Miranda*, an interrogation is custodial only where the suspect "has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. In other words, although a court must consider the totality of the circumstances surrounding the interrogation, the ultimate inquiry is whether there has been a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Murphy*, 465 U.S. at 430 (internal quotation omitted); *see also*, *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam).

    2.    *Analysis*

Broadly construed, petitioner's application appears to raise two separate *Miranda* issues.[3] First, he contends that he was denied his *Miranda* rights by the introduction of a statement he made to the police immediately upon his arrest. Upon his arrest, the officer confiscated money on

---

[3]Petitioner's *Miranda* claim also references the introduction of evidence of his silence at the interrogation, which interrogation was done in the absence of *Miranda* warnings. This aspect of petitioner's claim is discussed above in connection with petitioner's prosecutorial misconduct claims.

petitioner's person, and the officer testified that petitioner stated "My partner made me take the money."[4] It is undisputed, however, that petitioner volunteered this statement to the arresting officer, and it was not made in response to any interrogation by the officer. *Miranda* does not bar all statements taken by the police after a person has been taken into custody; rather, it applies only to those statements that result from "express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). "By its own terms, *Miranda* does not apply to volunteered statements." *Anderson v. Thieret*, 903 F.2d 526, 531-32 (7th Cir. 1990); *see also*, *Miranda*, 384 U.S. at 478 ("The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated."). Thus, "statements voluntarily initiated by defendants, absent police interrogation or its functional equivalent, are admissible even in the absence of *Miranda* warnings." *United States v. Campbell*, 609 F. Supp. 2d 674, 689 (E.D. Mich. 2009) (Rosen, J.). Here, the record evidence establishes that petitioner's statement was spontaneously made, and was not made in response to any police questioning or its functional equivalent. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner also suggests that the questioning by the police without advising him of his rights violated *Miranda*, even though he made no statement that was introduced against him. This claim is without merit. In *Chavez v. Martinez*, 538 U.S. 760 (2003), a plurality of the Court explained that "[s]tatements compelled by police interrogations of course may not be used against a defendant at trial, but it is not until their use in a criminal case that a violation of the Self-Incrimination Clause

---

[4]Petitioner contends that he actually asked "Why you take my money?" What petitioner actually said is irrelevant to the issue of whether the statement, whatever it may have been, was taken from petitioner and introduced at trial in violation of his *Miranda* rights.

occurs." *Id*. at 767 (plurality op.). Where a person's statements are "never admitted as testimony against him in a criminal case," that person was not "made to be a 'witness' against himself in violation of the Fifth Amendment's Self-Incrimination Clause," and thus the Court rejected the argument that "the mere use of compulsive questioning, without more, violates the Constitution." *Id*. Justice Kennedy, joined by Justice Stevens on this point, agreed with the plurality that "a failure to give a *Miranda* warning does not, without more, establish a completed violation when the unwarned interrogation ensues." *Id*. at 789 (Kennedy, J., concurring in part and dissenting in part). Thus, in *Chavez* a majority held that unwarned questioning in violation of *Miranda* does not establish a constitutional violation without a subsequent use at trial of the suspect's statements. *See also*, *United States v. Patane*, 542 U.S. 630, 641-42 (2004) (plurality op. of Thomas, J.).

Thus, the mere fact that petitioner may have been questioned without having been advised of his rights under *Miranda* does not establish a constitutional violation tainting his conviction. Because he does not allege that any statements from the interrogation (as opposed to his silence) were used against him at trial, the mere questioning of him without any advisement of rights does not entitle petitioner to habeas relief. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.      *Identification, Newly Discovered Evidence and Innocence (Claims VI-VIII)*

In his sixth, seventh, and eight claims, petitioner essentially argues that he was innocent of the charges and the evidence against him was insufficient. For example, although he characterizes his sixth claim as one involving identification, he does not claim that his conviction resulted from any constitutionally impermissible suggestive line-up procedure. Rather, he claims that the testimony of the people in the store regarding the description of the robbers did not match him or

his clothing, and thus he was improperly convicted based on this testimony. Similarly, although petitioner characterizes his seventh claim as involving the exclusion of testimony of a witness, he is really claiming that the witness is newly discovered and that evidence provided by this witness shows that he is innocent. And although he characterizes his eighth claim as one implicating his right to present a defense, again the claim focuses on inconsistencies in the evidence which, he claims, establish his innocence. Thus, I analyze all of these claims together, employing both actual innocence and sufficiency of the evidence analyses. So analyzed, the Court should conclude that petitioner is not entitled to habeas relief on these claims.

      1.     *Newly Discovered Evidence & Actual Innocence*

To the extent petitioner bases his sixth through eighth claims on newly discovered evidence and an assertion that he is innocent, his claim does not provide a cognizable basis for habeas review.

A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, the existence of new evidence, standing alone, is not a basis for granting the writ. As the Supreme Court has explained: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also*, *id*. at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred *constitutional* claim considered on the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial.");

*Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Thus, the newly discovered evidence, standing alone, provides no basis for habeas relief.

Further, petitioner's evidence falls far short of that necessary to establish that he is innocent. In *Herrera*, without elaborating further, the Court noted that even if a free-standing claim of innocence were cognizable on habeas review, "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Herrera*, 506 U.S. at 417. In *Schlup*, the Court elaborated on the showing required to establish "actual innocence" for purposes of overcoming a procedural bar to consideration of a constitutional claim. The Court explained that, to establish actual innocence, the petitioner must "show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327 (internal citation and quotation omitted).

The Supreme Court has also explained that a petitioner cannot establish his actual innocence merely be rehashing his innocence claims raised in the state courts and relying on the evidence adduced at trial. If he could, federal habeas review would become nothing more than a second trial on the merits, something the Supreme Court has repeatedly admonished the federal courts to avoid. *See Milton v. Wainwright*, 407 U.S. 371, 377 (1972) ("The writ of habeas corpus has limited scope; the federal courts do not sit to re-try state cases *de novo*[.]"). Thus, "to be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error

with new reliable evidence that was not presented at trial." *Schlup*, 513 U.S. at 324. "Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996) (citations omitted); *accord Schlup*, 513 U.S. at 324 (referring to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence").

For the most part, petitioner's arguments in Claims VI-VIII rehash the trial evidence, attempting to show how the evidence did not support his conviction. Even if these arguments are new, they do not rely on any newly discovered evidence. As noted above, even for purposes of establishing an actual innocence gateway to review of a defaulted claim, such a rehashing of the evidence at trial is insufficient to establish actual innocence. The only new evidence upon which petitioner relies are affidavits from Shawn Burnett and Ricco Holmes. Burnett, who executed his affidavit on January 14, 2009, avers that while detained in the Genesee County Jail with Greer, Greer told him that petitioner had nothing to with the robbery. *See* Supplemental Pet., Ex. A. Holmes, who executed his affidavit on February 13, 2004, likewise avers that Greer told him that petitioner had nothing to do with the robbery. *See* Br. in Supp. of Supp. Pet., Appx. C. These affidavits are insufficient to establish petitioner's actual innocence.

The affidavits submitted by petitioner are not the type of newly discovered reliable evidence sufficient to establish petitioner's innocence. Long-delayed affidavits, like Burnett's here, which seek to exonerate a petitioner and shift the blame for the crime to another person are "treated with a fair degree of skepticism." *Herrera v. Collins*, 506 U.S. 390, 423 (1993). *see also Byrd v. Collins*, 209 F.3d 486, 508 n. 16 (6th Cir. 2000). Burnett's affidavit does not explain why witnesses waited

several years after petitioner's trial to come forward. *See Lewis v. Smith,* 110 Fed. Appx. 351, 355 (6th Cir. 2004) (proper for district court to reject as suspicious a witness' recanting affidavit made two years after petitioner's trial); *Olson v. United States*, 989 F.2d 229, 231 (7th Cir. 1993)(recantation more than four years after trial testimony was dubious). Further, according to the Michigan Department of Corrections's Offender Tracking Information System (OTIS) website, Burnett is serving a sentence of life imprisonment without possibility of parole, reducing the threat of criminal penalty or other sanction which would attach to his statement to render it credible. *Cf. In re Byrd*, 269 F.3d 561, 574 (6th Cir. 2001).

Further, neither affidavit is based on personal knowledge. Rather, they merely state what Greer allegedly told them. Their testimony would have been hearsay and inadmissible at trial, and thus does not constitute new evidence of innocence. *See United States v. Salameh*, 54 F. Supp. 2d 236, 288 (S.D.N.Y. 1999), *aff'd*, 16 Fed. Appx. 73 (2d Cir. 2001). And, even if otherwise admissible, the averments in their affidavits are duplicative of Montgomery's testimony at trial, testimony that was rejected by the jury in finding petitioner guilty. Such duplicative evidence does not constitute new evidence of innocence. *See Howard v. Wolfe*, 199 Fed. Appx. 529, 534 (6th Cir. 2006); *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 606 (E.D. Mich. 2001) (Tarnow, J.); *Salameh*, 54 F. Supp. 2d at 288. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on the basis of actual innocence.

2. *Sufficiency of the Evidence*

Petitioner's sixth through eight claims also assert that the evidence was insufficient to prove his guilt beyond a reasonable doubt. The Court should conclude that petitioner is not entitled to habeas relief on this basis.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). However, under the amended version of § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691

(1975).  Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

### b. Analysis

Petitioner does not challenge the sufficiency of the evidence with respect to any element of the offense.  Rather, petitioner contends that he did not participate in the robbery, and only entered Greer's car after the robbery had already been accomplished, with no knowledge that Greer and another accomplice who had exited the car had committed the robbery.  At trial, however, the prosecution presented more than sufficient evidence to establish petitioner's identity as one of the perpetrators of the robbery.  Petitioner was seen fleeing from Greer's vehicle shortly after the robbery, and attempted to elude the police.  Once found, petitioner had cash on his person.  Although petitioner was wearing a black shirt at the time of his apprehension, a white t-shirt (which witnesses described the second robber as wearing) was found along his route of escape, along with additional cash.  Further, Deputy Chema testified that upon his arrest petitioner said, "my partner made me take the money."  And, most importantly, petitioner was identified as the other perpetrator by Greer, his codefendant.  This evidence, if believed by the jury, was sufficient to establish petitioner's identity as one of the robbers.

Petitioner's arguments to the contrary are unavailing.  He argues that there were numerous inconsistencies in the record which indicate that another person may have committed the robbery with Greer.  He points to the fact that only one gun was found, rather than two, and that a brown wallet taken during the robbery was not recovered.  He also points out that he had an explanation for the cash found on him when he was arrested.  He also points to the inconsistences in Greer's statements to the police and Montgomery's testimony regarding Greer's statement to him that

petitioner was not involved. He also notes that at the time of his arrest, he was wearing a black shirt, not a white shirt. These arguments do not show that the evidence was insufficient. It is well-established that a reviewing court, whether on direct appeal or habeas review, "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United States v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *Walker v. Russell*, 57 F.2d 472, 475-76 (6th Cir. 1995); *see also*, *United States v. Bailey*, 444 U.S. 394, 414-15 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). "The fact that the testimony is contradictory does not mean that evidence is insufficient, only that the jury must make credibility determinations." *Government of the Virgin Islands v. Isaac*, 50 F.3d 1175, 1179 (3d Cir. 1995). It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326; *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996). Nor does the fact that a gun used in the robbery or some of the money stolen were not recovered render the evidence which was presented insufficient to establish petitioner's guilt. Likewise, the fact that the evidence may have supported another version of events–that petitioner had a valid source for the money or that another person committed the robbery with Greer–is irrelevant; the prosecution's evidence need not rule out every hypothesis other than petitioner's guilt to be sufficient. *See Jackson*, 443 U.S. at 326. Here, the prosecution presented testimony from Greer that identified petitioner as his accomplice in the robbery, and presented further corroborating evidence in the form of petitioner's flight, the shirt and money recovered along the path of petitioner's flight, and petitioner's statement to Deputy Chema. Because the evidence presented, if believed by the jury, was sufficient to establish petitioner's guilt beyond a reasonable doubt,

petitioner is not entitled to habeas relief on this claim.

I.      *Ineffective Assistance of Counsel (Claims IV & XI)*

Finally, petitioner contends that his trial counsel rendered constitutionally inadequate assistance by failing to object to the instances of prosecutorial misconduct set forth in this habeas petition, and by failing to object to the jury instruction regarding Montgomery's testimony. Petitioner contends that his appellate counsel was ineffective for failing to pursue the evidence of innocence provided by Ricco Holmes and for failing to raise his motion for relief from judgment claims on direct appeal. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689;

*O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

### 2. *Trial Counsel (Claims IV & IX)*

As explained above, none of petitioner's prosecutorial misconduct claims have merit, and thus any objection by counsel would have been futile. Counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993).

Petitioner's jury instruction claim, discussed above, is without merit here because of the clearly established law requirement of § 2254(d)(1), a requirement which did not apply in the state criminal proceedings. Nevertheless, it is clear that the instruction was proper as a matter of state law, and that any objection to the instruction would likewise have been futile. *See People v. Holguin*, 141 Mich. App. 268, 272, 367 N.W.2d 846, 849 (1985). Indeed, counsel's failure to object was a reasonable tactical decision. Under *Holguin*, the trial court had three options once Montgomery invoked his privilege against self-incrimination: totally striking Montgomery's testimony; partially striking Montgomery's testimony; or the limiting instruction given by the court.

*See id.*  In light of the fact that Montgomery was allowed to testify about Greer's statements, which were ultimately consistent with petitioner's own testimony, counsel reasonably concluded that it was better to have Montgomery's testimony stand even with the limiting instruction, than to lose that favorable testimony altogether.  Thus, petitioner cannot show that counsel was ineffective in failing to object to this instruction, and the Court accordingly should conclude that petitioner is not entitled to habeas relief on this claim.

Finally, petitioner contends that trial counsel was ineffective in failing to interview Holmes and call him as a witness.  However, even assuming that counsel's performance with respect to Holmes was deficient, petitioner cannot show a reasonable probability that petitioner would have been acquitted had Holmes been called at trial.  As explained above in connection with petitioner's newly discovered evidence claim, Holmes's affidavit mirrors the testimony given at trial by Montgomery regarding Greer's statement exonerating petitioner.  Petitioner has offered no reason why the jury would have been any more likely to credit Holmes's testimony than they did Montgomery's, which the jury did not credit at all.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.    *Appellate Counsel (Claim IX)*

Petitioner also contends that his appellate counsel was ineffective for failing to raise his motion for relief from judgment claims on direct appeal.  In the appellate counsel context, a showing of prejudice requires a showing that petitioner's claims would have succeeded on appeal.  *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).  As explained above, each of petitioner's underlying claims is without merit, and thus petitioner cannot show that he was prejudiced by counsel's failure to raise the claims on direct

appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

J.    *Recommendation Regarding Certificate of Appealability*

1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of

probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." Fed. R. App. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.     *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability, for the reasons set forth above. In light of *Robinson* and *Fletcher*, the conclusion that the prosecutor's reference to petitioner's silence was permissible is not reasonably debatable. And in light of the absence of any clearly established law on the matter, the resolution of petitioner's jury instruction claim relating to Montgomery's invocation of his right to remain silent is not reasonably debatable. Similarly, because petitioner's statement to Deputy Chema was volunteered, and not elicited by custodial interrogation, the resolution of petitioner's *Miranda* claim is not reasonably debatable.

43

The resolution of the claims raised in petitioner's sixth through eighth claims, which in essence assert claims of actual innocence and insufficiency of the evidence, are not reasonable debatable because actual innocence is not a cognizable basis for habeas relief, the evidence submitted by petitioner does not establish his actual innocence, and the evidence at trial viewed in the light most favorable to the prosecution was more than sufficient to establish petitioner's identity as the perpetrator. Finally, the resolution of petitioner's remaining prosecutorial misconduct and ineffective assistance of counsel claims is not reasonably debatable, for the reasons discussed in connection with those claims. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

K.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also conclude that petitioner is not entitled to a certificate of appealability.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will

not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991).  *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.



s/Paul J. Komives_____
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 6/3/10

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on June 3, 2010.

s/Eddrey Butts\_\_\_\_\_
Case Manager